UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
SHAOLIN MOORE,

                    Plaintiff,

     -v-                                    5:20-CV-1641

CITY OF SYRACUSE, POLICE
OFFICER CHRISTOPHER BUSKE,
POLICE OFFICER LEONARD BROWN,
LIEUTENANT GENO TURO, CHIEF OF
POLICE KENTON T. BUCKNER, and
DOES 1-200,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                      OF COUNSEL:

LAW OFFICES OF                    CHARLES A. BONNER, ESQ.
   BONNER & BONNER               A. CABRAL BONNER, ESQ.
Attorneys for Plaintiff
475 Gate 5 Road, Suite 211
Sausalito, California 94965

RYDER LAW FIRM                    JESSE P. RYDER, ESQ.
Attorneys for Plaintiff
6739 Myers Road
East Syracuse, New York 13257

CASE LAW LTD.                     JEFFREY LOUIS
Attorneys for Plaintiff              MENDELMAN, ESQ.
580 California Street 12th Floor
San Francisco, California 94104

HANCOCK ESTABROOK, LLP         JOHN G. POWERS, ESQ.
Attorneys for Defendants       MARY L. D'AGOSTINO, ESQ.
1800 AXA Tower I
100 Madison Street
Syracuse, New York 13202

CITY OF SYRACUSE CORPORATION   SARAH MAE
   COUNSEL                        KNICKERBOCKER, ESQ.
Attorneys for Defendants
233 East Washington Street
Room 300 City Hall
Syracuse, New York 13202

CITY OF SYRACUSE LAW           TODD M. LONG, ESQ.
   DEPARTMENT
Attorneys for Defendants
233 East Washington Street
300 City Hall
Syracuse, New York 13202

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

On December 4, 2020, plaintiff Shaolin Moore ("Moore" or "plaintiff") filed a complaint in this district. Plaintiff alleges civil rights violations and other torts against defendant police officers Christopher Buske ("Buske"), Leonard Brown ("Brown") and Lieutenant Geno Turo ("Turo"), as well as their employer the City of Syracuse ("Syracuse" or the "City") and its Chief of Police, Kenton T. Buckner ("Buckner"). The complaint also takes aim at two hundred Doe defendants (collectively "defendants"). At bottom, plaintiff

claims that Buske and Brown used excessive force while arresting him without probable cause on May 31, 2019.  Plaintiff would hold the other defendants vicariously liable for that misconduct, as well as for his general alleged mistreatment at the hands of the Syracuse Police Department.

On June 8, 2021, Defendants moved to dismiss that complaint in part under Federal Rule of Civil Procedure ("Rule") 12(b)(6).  In the same motion, defendants asked that Moore be directed to replead his complaint under Rule 8, or at least that portions of his complaint be struck under Rule 12(f).  That motion, having been fully briefed, will now be considered on the submissions and without oral argument.

## II. **BACKGROUND**

At 8:20 p.m. on May 31, 2019, defendants Buske and Brown were on patrol in Syracuse.[1]  Dkt. 1 (Compl."), ¶ 12.  Both defendants were wearing body cameras that night.[2]  *Id.*  At some point on patrol, defendants spotted a white Cadillac SUV playing music at a high volume.  *Id.*  Buske and Brown promptly pulled the SUV over.  *Id.*  Buske approached the driver of the vehicle, while Brown walked up to the passenger side window.  *Id.*

---

[1] The facts are taken entirely from plaintiff's amended complaint as is appropriate on a motion to dismiss under Rule 12(b)(6).

[2] Plaintiff has made the video captured by defendants' body cameras available to the Court.  The Court has reviewed the footage, but will pass on this motion from the complaint's interpretation of the captured events read in the light most favorable to plaintiff.

Moore was driving the Cadillac. Compl. ¶ 12. Plaintiff alleges that he already had his driver's license out for inspection by the time Buske reached his window. *Id.* Apparently, Buske briefly glanced at plaintiff's driver's license before asking him to step out of the vehicle. *Id.* Plaintiff responded "[n]o, I got a license." *Id.*

Allegedly, Buske responded by repeating his request that Moore exit the vehicle. Compl. ¶ 13. Apparently confused by the order, plaintiff asked why he needed to step out, claiming that there was no probable cause for an arrest. *Id.* Buske apparently retorted that plaintiff was playing music, by which he presumably meant that plaintiff was playing it too loudly. *Id.* Plaintiff alleges that he responded "you can give me a ticket but I don't need to get out of the car." *Id.*

At this point, Moore claims that Buske explained that the ticket was a form of arrest. Compl. ¶ 13. According to Buske, that arrest entitled him to search plaintiff. *Id.* Plaintiff allegedly responded that he did not have any contraband. *Id.*

Moore alleges that Buske then unbuckled plaintiff's seatbelt and said "get the f--- out of the car or else you're getting sprayed." Compl. ¶ 13. Buske then allegedly grabbed plaintiff by his arm and the back of his neck to drag him out of the car. *Id.* At the same time, plaintiff alleges that he told his passenger to record the altercation. *Id.*

4

According to Moore, Buske yanked plaintiff out of the car and threw him face down on the ground.  Compl. ¶ 13.  As plaintiff was turning away from the concrete, Buske allegedly punched plaintiff in the left temple with his right fist.  *Id.*  Apparently, Brown was not far behind.  *See id.*  Plaintiff claims Brown circled around the Cadillac and "jumped on top" of him with his full bodyweight.  *Id.*  According to plaintiff, Brown yelled "you're an idiot" at plaintiff during this maneuver.  *Id.*

After Brown piled on Moore, plaintiff claims that Buske punched him in his "head area" "at least two more times."  Compl. ¶ 13.  After the last, Buske allegedly kept his fist "pressed into [plaintiff's] skull."  *Id.*  Buske then "shove[d] his left knee down on [plaintiff's] temple, ear[,] and [the] top of his neck."  *Id.*  Plaintiff claims he asked why Buske and Brown were treating him that way.  *Id.*  Buske and Brown did not directly respond, however.  *See id.*  Instead, Brown continued shouting that plaintiff was an "idiot," while Buske called him a "motherf-----."  *Id.*  Another nearby cop that plaintiff calls Doe 2 allegedly said "everybody's a tough guy now."  *Id.*

Eventually, Moore alleges that he was handcuffed.  *See* Compl. ¶ 14.  Buske and Doe 2 then walked plaintiff over to the police car.  *Id.*  Once there, plaintiff was pressed face down into the hood of the car while Buske and Doe 2 "aggressively" searched him.  *Id.*  During the search, plaintiff alleges that Brown approached and taunted plaintiff by saying "[y]ou happy with

yourself now?"  *Id.*  Apparently, Brown then thoroughly searched plaintiff's Cadillac.  *Id.*  No officer found contraband, either on plaintiff's person or in the Cadillac.  *Id.*

Moore claims that Buske next crumpled money found in Moore's pocket and told him "[y]ou're going to spend a night in jail, all because you wouldn't step out of a car."  Compl. ¶ 14.  Plaintiff allegedly responded "I [have] freedom of speech, why can't I talk?"  *Id.*  Brown then taunted plaintiff for driving with his music too loud.  *Id.*

After taunting Moore, apparently the police had his car towed, despite his passenger offering to drive it away.  Compl. ¶ 14.  While Brown was filling out the tow paperwork, plaintiff told defendant Lieutenant Turo, apparently also on the scene, that he was injured.  *Id.* ¶ 15.  Turo promised plaintiff that he would look at the body camera footage and, if he determined that Buske and Brown acted inappropriately, that he would "handle it."  *Id.*

In total, Moore alleges injuries "to his face, neck, back, head, [and] ribs, . . . causing mental and emotional damage including post-traumatic stress disorder, humiliation, fear[,] and anxiety[.]"  Compl. ¶ 16.  But plaintiff also alleges that instead of providing him medical treatment, defendants continued to taunt plaintiff on the drive to the jail.  *Id.*

Eventually, Buske and Brown each filled out reports concerning their arrest of Moore.  Compl. ¶ 17.  Plaintiff alleges that these reports were

replete with intentional falsehoods.  *Id.*  In particular, he decries as false Buske's claim that a loaded firearm was recovered nearby only moments earlier, his failure to mention his threat of using pepper spray on plaintiff, and his generally toning down his use of force.  *Id.*  Plaintiff also objects to both defendants insinuating that he acted in a threatening way or actively resisted arrest at any point.  *Id.*

On December 4, 2020, Moore filed a complaint in this district.  Dkt. 1.  At first, plaintiff's complaint was joined with another plaintiff's, but their claims were severed on April 5, 2021.  Dkt. 2.

Moore's complaint states sixteen causes of action:[3] (I) excessive force in violation of the Eighth Amendment to the Constitution of the United States under 42 U.S.C. § 1983 ("§ 1983") against Buske, Brown, and Turo; (II) imputed liability for § 1983 claims against Syracuse and Buckner under *Monell v. Department of Social Services*, 436 U.S. 658 (1978); (III) failure to prevent a conspiracy to violate constitutional rights under 42 U.S.C. § 1986 ("§ 1986")[4] against all defendants; (IV) false arrest in violation of the Fourth Amendment under § 1983 against Buske and Brown; (V) false imprisonment in violation of the Fourth Amendment under § 1983 against Buske and

---

[3] The body of the complaint lists only fifteen, while the cover sheet lays out sixteen.  The final cause of action is merely a request for punitive damages, so discrepancy is largely technical.

[4] Plaintiff frames his § 1986 claim as one for negligent hiring, training, supervision, and retention.  Plaintiff's claim will be considered to the extent that his supervisory allegations can be reconciled with the requirements of a § 1986 claim.

Brown; (VI) assault and battery in violation of the Fourth Amendment to the

Constitution under § 1983 against Buske and Brown; (VII) unlawful search of

a person in violation of the Fourth Amendment under § 1983 against Buske

and Brown; (VIII) unlawful search of a vehicle in violation of the Fourth

Amendment under § 1983 against Buske and Brown; (IX) deliberate

indifference to medical needs in violation of the Fourteenth Amendment

against Buske, Brown, and Turo; (X) ratification under § 1983 against both

the City and Buckner; (XI) false imprisonment under New York state

common law against Buske and Brown; (XII) assault under New York state

common law against Buske and Brown; (XIII) battery under New York state

common law against Buske and Brown; (XIV) negligent hiring, training,

retention and supervision under New York state common law against the

City and Buckner; (XV) a request for declaratory relief to the effect that

plaintiff was factually innocent of the charges for which he was arrested and

that Buske and Brown willfully made false charges in his incident report

concerning the arrest; and (XVI) a request for punitive damages.

On June 8, 2021, defendants moved under Rule 12(b)(6) to dismiss the

complaint in part.  Dkt. 18.  They also moved to strike portions of the

complaint or to order Moore to replead under Rules 12(f) and 8, respectively.[5]
This decision now follows.

## III. <u>LEGAL STANDARD</u>

To survive a motion to dismiss, "a complaint must contain sufficient
factual matter, accepted as true, to state a claim to relief that is plausible on
its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  That factual matter
may be drawn from "the facts alleged in the complaint, documents attached
to the complaint as exhibits, and documents incorporated by reference in the
complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111
(2d Cir. 2010).

Importantly, "the complaint is to be construed liberally, and all reasonable
inferences must be drawn in the plaintiff's favor." *Ginsburg v. City of Ithaca*,
839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012) (citing *Chambers v. Time Warner,
Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).  If the complaint and its additional
materials—when viewed through that pro-plaintiff lens—are not enough to
raise the plaintiff's right to relief on a claim above the speculative level, that
claim must be dismissed.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555
(2007).

---

[5] That same day, the defendants in the severed case made a nearly identical motion.  *See
generally Johnston v. City of Syracuse*, 5:20-CV-1497, Dkt. 34, *passim*.  Although the two motions
were considered separately, the analysis for both is functionally the same.  *Id.*

## IV. <u>DISCUSSION</u>

Defendants' motion to dismiss can be grouped into six general headings: (1) Moore's § 1986 claim is untimely and otherwise defective because plaintiff has failed to plead a claim under 42 U.S.C. § 1985 ("§ 1985"); (2) plaintiff has failed to allege any valid federal claims against Buckner; (3) plaintiff's federal assault and battery and false imprisonment claims are duplicative of his excessive force and false arrest claims, respectively; (4) plaintiff's state law claims are untimely; (5) plaintiff's requested declaratory relief is unavailable; and (6) portions of plaintiff's complaint are unnecessary and confusing, and should either be stricken under Rule 12(f) or else plaintiff should be required to replead under Rule 8.

In response, Moore has asked for leave to amend his complaint to resuscitate his § 1986 claim and to add claims of conspiracy under 42 U.S.C. §§ 1983 and 1985.

### A. <u>Section 1986 Failure to Prevent a Conspiracy Claims</u>

Section 1986 opens to liability "[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in [§ 1985], are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do[.]"  42 U.S.C. § 1986. That somewhat archaic construction cashes out to this: § 1983 "provides a cause of action against a person with the power to prevent a [§] 1985

violation who has failed to do so[.]" *Poulos v. City of N.Y.*, 2015 WL 5707496, at *8 (S.D.N.Y. Sept. 29, 2015).  In other words, you cannot have a § 1986 claim without a viable claim under § 1985 supporting it.  *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993).

Concerning Moore's § 1986 claim, defendants argue that his complaint is missing the prerequisite § 1985 conspiracy claim.  What is more, defendants argue that even if he had facially advanced a conspiracy claim, that claim would be hopelessly defective.

Moore readily acknowledges that he failed to plead a § 1985 conspiracy claim.  However, he contends that his complaint provides the groundwork for that claim and asks for leave to amend his complaint to properly plead a conspiracy under § 1985.  Plaintiff would also add a conspiracy claim under § 1983.

The Court will delve into whether Moore will be permitted to amend his complaint to include a conspiracy claim later.  For now, it is enough to say that whether plaintiff's complaint hid a viable § 1985 conspiracy claim is irrelevant to whether his § 1986 claim can proceed.

On the face of the statute, § 1986 provides a one-year statute of limitations.  42 U.S.C. § 1986.  Moore filed his complaint on December 4, 2020, but he provides no factual allegations occurring after May 31, 2019.  Accordingly, the clock ran out on plaintiff's § 1986 claim some six months

11

before he filed his complaint.  Plaintiff's § 1986 claim is therefore time barred and must be dismissed.[6]

The Court also notes that Moore's § 1986 claim is the only claim stated against "all" defendants, and in fact the only claim against the 200 Doe defendants.  Accordingly, the complaint states no cause of action against anyone other than Buske, Brown, Turo and the City of Syracuse.  Does 1-200 must therefore also be dismissed.

Additionally, because Moore cannot correct this temporal defect, amendment to this claim would be futile.  Dismissal must be with prejudice.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (noting that district courts need not grant leave to amend if amendment would be futile).

## B. *Monell* and Ratification Claims Against Defendant Buckner

Having dispensed with his § 1896 claim against Buckner, Moore has only two remaining federal claims against the Chief of Police  First, plaintiff alleges a *Monell* claim against Buckner as Syracuse Police Department's policymaker.  In *Monell*, the Supreme Court allowed for municipalities to be

---

[6] To whatever extent plaintiff is arguing that the governor of the State of New York's executive order providing relief from statutes of limitations during the COVID-19 pandemic should salvage this claim, that argument is mistaken.  Section 1986 is a federal statute, and this is a federal court.  The state of New York's orders may have an effect when federal statutes borrow from state statutes of limitations, but they cannot overpower Congress's provision of a specific limitations period.  *See, e.g.*, *Bonilla v. City of N.Y.*, 2020 WL 6637214, at *3 (E.D.N.Y. Nov. 12, 2020) (considering whether to borrow emergency tolling under executive order for federal statutes relying on state law for statute of limitations only because federal statute was silent as to limitations period).  Plaintiff must be held to a statute of limitations of only one year for his § 1986 claim.

held liable under § 1983 for constitutional violations caused by that municipality's policy or custom.  436 U.S. at 694.

But as defendants correctly note, *Monell* did *not* allow for individuals to be held liable under the same theory, even if they made the policy that caused the injury.  *See, e.g.*, *Acquah ex rel. J.B. v. City of Syracuse*, 2020 WL 1510405, at *2 (N.D.N.Y. Mar. 30, 2020) (collecting cases holding that individual liability does not attach under *Monell*).  Moore's *Monell* claim under Count II must therefore be dismissed as to Buckner.

Second, Count IX names Buckner as a defendant for a claim of "ratification."  However, ratification is a theory of *Monell* liability, not a freestanding claim for supervisory liability under § 1983.  *See Hu v. City of N.Y.*, 927 F.3d 81, 104-05 (2d Cir. 2019) (discussing ratification as "theory of municipal action" for purposes of attaching *Monell* liability).  Accordingly, Moore's Count IX ratification claim must be dismissed in its entirety.  Because there are fundamental defects in both the *Monell* claim against Buckner and the ratification claim generally, amendment to those claims would be futile, and dismissal must be with prejudice.

## C. **Federal Assault and Battery and False Imprisonment Claims**

Next, defendants set their sights on Moore's § 1983 assault and battery and false imprisonment claims.  To defendants' minds, those claims are

duplicative of plaintiff's § 1983 excessive force and false arrest claims. Defendants are right.

A number of courts have held that a § 1983 claim alleging assault and battery against a police officer is properly construed as an excessive force claim. *Boyler v. City of Lackawanna*, 287 F. Supp. 3d 308, 323 (W.D.N.Y. 2018) (noting that assault and battery claims under § 1983 "are properly formulated as excessive force claims"). Courts have done the same when a plaintiff brings both a false arrest and a false imprisonment claim. *See, e.g.*, *Bowman v. City of Middletown*, 91 F. Supp. 2d 644, 660 (S.D.N.Y. 2000) (dismissing false imprisonment claim as "merely a species of false arrest").

Accordingly, Moore's § 1983 assault and battery claim is duplicative of his excessive force claim, and his § 1983 false imprisonment claim is duplicative of his false arrest claim.[7] Counts V and VI must be dismissed. Because amendment to those counts would be futile, that dismissal must also be with prejudice.

**D. <u>State Law Claims</u>**

The parties also spar over Moore's several state law claims. Remember, he brings four state claims: (X) false imprisonment; (XI) assault;

---

[7] Whether a state law claim for assault and battery or false imprisonment can coexist with § 1983 excessive force and false arrest claims is a thornier issue that the Court need not decide for reasons explained below.

(XII) battery; and (XIII) negligent training, hiring, retention, and supervision.

Among defendants' varied attacks on Moore's state law claims, they urge that he has failed to file those claims within the statute of limitations.  Under New York General Municipal Law § 50-i, a plaintiff must commence an action against a New York municipality "within one year and ninety days after the happening of the event upon which the claim is based[.]"  Plaintiff's complaint stems from alleged misconduct on May 31, 2019, but he did not file his complaint until December 4, 2020.  Compl. ¶ 12; Dkt. 1.

A year and ninety days from May 31, 2019 is August 29, 2020, several months before Moore filed his complaint.  Compl. ¶ 12; Dkt. 1.  On its face, plaintiff's complaint is untimely.  As plaintiff correctly points out, though, the Governor of the State of New York attempted to toll the statute of limitations—including for civil actions—from March 7, 2020 to November 3, 2020 to help the state navigate the ongoing COVID-19 pandemic.  Exec. Order Nos. 202.8 (N.Y. Mar. 7, 2020); 202.67 (N.Y. Oct. 4, 2020).

If Moore had filed his complaint on November 3, 2020, that would have been the end of the matter.  His complaint would have been unquestionably timely, and the Court would have considered his claims on the merits of his allegations.  But he did not.  Instead, his delay in filing his complaint complicates matters considerably.

15

How Moore's delay throws a monkey wrench into the Court's analysis is itself a complicated question.  It seems clear that New York's governor intended to toll—rather than suspend—the statute of limitations through his pandemic-related executive orders.  *See* Exec. Order No. 202.67 (N.Y. Oct. 4, 2020) (noting that "any specific time limit for the commencement, filing, or service of any legal action, notice, motion, or other process or proceeding" was "tolled" until November 3, 2020); *see also Lopez-Motherway v. City of Long Beach*, 2021 WL 965158, at *8 (E.D.N.Y. Mar. 15, 2021) (interpreting Executive Order 202.67 as intending to toll statute of limitations).

But there is somewhat more doubt as to whether the governor had the authority to toll the statutes of limitations, even in light of the pandemic.  New York Executive Law § 29-a authorizes a governor to "temporarily suspend specific provisions of any statute . . . if compliance with [its] provisions would prevent, hinder, or delay action necessary to cope with [a] disaster."[8]  N.Y. EXEC. LAW § 29-a(1).

---

[8] Previously, the governor was permitted to "issue any directive during a state disaster emergency" so long as that directive was "necessary to cope with the disaster."  *See Lopez-Motherway*, 2021 WL 965158, at *8 (citing N.Y. EXEC. LAW § 29-a(1)).  That authority was subsequently revoked.  Bill Chappell, *New York Legislature Strips Cuomo of Extraordinary Emergency Powers, with a Caveat*, NPR (Mar. 5, 2021, 7:42 p.m.), https://www.npr.org/2021/03/05/974083354/new-york-legislature-strips-cuomo-of-extraordinary-emergency-powers-with-a-cavea (last visited Aug. 31, 2021).

Many observers and litigants have argued that New York Executive Law § 29-a's authorization of only a temporary suspension means that New York's executive branch lacked the authority to toll the statute of limitations instead of merely suspending it.  *See, e.g.*, *Bastell v. Vill. of Rye Brook*, 144 N.Y.S.3d 556, at *2 (Sup. Ct. Westchester Cty. 2021) (unpublished table opinion) (considering argument that governor lacked authority to toll rather than suspend statute of limitations).

Those same observants and litigants have put a lot of stock in the difference between those two terms.[9]  As some would define it, a toll pauses the limitations period: during the duration of the toll, the clock to file does not run.  *Lopez-Motherway*, 2021 WL 965158, at *7.  Once the toll ends, the clock resumes from where it was when the toll began, and the plaintiff has the rest of his limitations period to file his complaint.  *See id.*

Conversely, a suspension only means that the statute of limitations does not apply for the duration of the suspension.  *See Lopez-Motherway*, 2021 WL 965158, at *7.  Thus, a plaintiff must file his complaint before the suspension comes to an end for his claim to be timely.  *See id.*

If the governor lacked the power to toll the statute of limitations under New York Executive Law § 29-a, then his executive order could only have

---

[9] It must be said, though, that others do not.  *See Bonilla v. City of N.Y.*, 2020 WL 6686531, at *2 n.2 (E.D.N.Y. Oct. 3, 2020) (magistrate judge noting that distinction between suspension and toll can be ambiguous), *aff'd*, 2020 WL 6637214 (E.D.N.Y. Nov. 12, 2020).

suspended limitations period.  In the case of a suspension, Moore's complaint filed after Executive Order 202.67 expired is untimely and must be dismissed.  But of course, if the governor *did* have the authority to toll the statute of limitations, then plaintiff's state law claims were timely.

The handful of New York trial courts to have considered the governor's authority to toll statute of limitations have unanimously upheld that power. *See, e.g.*, *Bastell*, 144 N.Y.S.3d 556, at *2 (holding that governor had authority to toll statutes of limitations); *Chevra Gmilas Chesed Stropkover Joseph Chaim v. Washington Cemetery*, 148 N.Y.S.3d 370, 371 (Sup. Ct. Kings Cty. 2021) (same); *In re 701 River St. Assocs. LLC*, 148 N.Y.S.3d 365, 369 (Sup. Ct. Rensselaer Cty. 2021) (same).

Even so, no New York appellate court has so much as considered that question as of yet.  The Court would thus be largely flying blind in answering a complicated question of state law.  *See Phila. Indem. Ins. Co. v. Indian Harbor Ins. Co.*, 434 F. Supp. 3d 4, 10 (E.D.N.Y. 2020) (noting that federal court's duty in divining state law is to ascertain opinion of state's highest court, regardless of lower and intermediate court opinions).

Fortunately, it is a question that the Court need not answer at this time. Moore relies on supplemental jurisdiction under 28 U.S.C. § 1367 to bring state law claims in this Court.  Under that statute, district courts are vested with the discretion to decline to exercise that jurisdiction if a claim "raises a

novel or complex issue of State law." 28 U.S.C. § 1367(c)(1).  Principles of
comity suggest that exercising this discretion becomes especially important
when "those questions concern the state's interest in the administration of its
government."  *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 306 (2d Cir. 2003)
(quoting *Seabrook v. Jacobson*, 153 F.3d 70, 72 (2d Cir. 1998)).

In short, the Court is satisfied that determining whether Moore's claims
are timely would involve grappling with a novel issue of New York state law
dealing directly with the administration of the state's government.  The
Court must therefore decline to exercise supplemental jurisdiction over
plaintiff's state law claims.  Counts XI-XIV must therefore be dismissed.  *See,
e.g.*, *Lopez-Motherway*, 2021 WL 965158, at *9 (declining to exercise
supplemental jurisdiction over claims requiring decision on New York
governor's authority to toll statutes of limitations during pandemic).

### E. **Plaintiff's Request for Declaratory Judgment**

In Count XV of his complaint, Moore calls on the Court for a declaratory
judgment.  In a vacuum, there is nothing unusual about this.  The
Declaratory Judgment Act vests district courts with the discretion to "declare
the rights and other legal relations of any interested party . . . whether or not
further relief is or could be sought."  28 U.S.C. § 2201(a).

In exercising that discretion, the Second Circuit requires district courts to
consider: "(1) whether the judgment will serve a useful purpose in clarifying

or settling the legal issues involved"; and "(2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 105 (2d Cir. 2012). However, the Second Circuit has also favorably referenced three factors employed in other Circuits to approach the same question: (3) "whether the proposed remedy is being used merely for 'procedural fencing' or a 'race to res judicata"; (4) "whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court"; and (5) "whether there is a better or more effective remedy." *Id.*

Defendants do not take issue with Moore's request for declaratory relief itself so much as with the substance of that request. Specifically, plaintiff calls the Court to declare him "innocent" of the charges for which Buske and Brown arrested him on May 31, 2019 and to conversely declare that Buske and Brown "willfully made False Statements in their Deposition Police Reports, and by so doing, each violation is punishable as a Class A Misdemeanor pursuant to section 210.45 of the Penal Law of the State of New York." Compl. ¶ 87.

Upon weighing the factors handed down by the Second Circuit, the Court must decline jurisdiction over Moore's request for declaratory judgment. To begin, declaring plaintiff to be innocent would change nothing, because he is

already presumed innocent under New York law until and unless he is found guilty. *New York v. Cruz*, 960 N.E.2d 430, 434 (N.Y. 2011) (Lippman, C.J., concurring in result) (noting that "defendant is presumed innocent and must be treated by the state . . . in a way that is consonant with that presumption"). As a consequence, declaring plaintiff to be innocent would not advance his legal rights in any meaningful way. *Niagara Mohawk*, 673 F.3d at 105.

Neither would this Court's ruling on Buske or Brown's culpability achieve any practical result. It is only barely worth repeating that a criminal defendant is entitled to "a jury determination that he is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 477 (2000) (cleaned up) (citing *United States v. Gaudin*, 515 U.S. 506, 510 (1995)). But just as obviously, a jury in a civil case is only charged to reach a verdict by a preponderance. *SEC v. C.M. Joiner Leasing Corp.*, 320 U.S. 344, 355 (1943). By extension, any post-trial determination of Buske or Brown's culpability in this civil case would do nothing to advance their criminal culpability, which counsels against maintaining Moore's claim for declaratory relief. *Niagara Mohawk*, 673 F.3d at 105.

And of course, because affording Moore his requested declaratory relief would not settle or clarify any relevant legal issues concerning his complaint,

it would not finalize any of those issues, either.  *Niagara Mohawk*, 673 F.3d at 105.  That is to say nothing of the disrespect this Court would show to New York's courts by settling a state criminal issue in a federal civil case.  *Id.*

In sum, the two factors this Court is bound to consider in deciding whether to exercise jurisdiction over a claim for declaratory judgment cut strongly against exercising that jurisdiction now.  *Niagara Mohawk*, 673 F.3d at 105. In addition, issuing declaratory relief establishing Buske and Brown's criminal liability under New York law would laugh in the face of comity.  *Id.* The Court must decline to exercise jurisdiction over Moore's request for declaratory judgment and Count XV must be dismissed.

### F. **Defendants' Motion for Repleading or Alternatively to Strike**

Finally, defendants move under Rules 12(f) and 8 to either strike portions of Moore's complaint or to direct him to replead.  To defendants' point, plaintiff's complaint is hardly what Rule 8 contemplates from a pleading: a "short and plain" statement establishing the court's jurisdiction, plaintiff's entitlement to relief, and the relief plaintiff seeks.  FED. R. CIV. P. 8(a). Instead, plaintiff spends a sizeable portion of the complaint making legal arguments and citing to case law.

In the end, however, Moore's inclusion of legal arguments and other unnecessary matters in his complaint is not so problematic as to justify requiring him to replead entirely.  *See, e.g.*, *Hamzik v. Office for People with*

*Developmental Disabilities*, 859 F. Supp. 2d 265, 275 (N.D.N.Y. 2012) (denying Rule 8 motion to replead despite complaint's inclusion of "numerous legal arguments, citations to case law, and responses to affidavits").

Neither is the fluff in Moore's complaint so serious as to require that portions of it be struck. After all, Rule 12(f) is a disfavored remedy. *Cummings v. City of N.Y.*, 2021 WL 1163654, at *3 (S.D.N.Y. Mar. 26, 2021). Overcoming the general hostility for this remedy requires at least that the struck matter be "redundant, immaterial, impertinent, or scandalous." FED. R. CIV. P. 12(f). Plaintiff's anticipatory legal arguments are none of those things. They are at least related to the case, even if they are beyond the scope of what should be contained in a pleading. Defendants' motion to strike or compel plaintiff to replead must therefore be denied.

### G. **Plaintiff's Request for Leave to Amend**

As noted earlier, Moore has requested leave to amend his complaint to raise claims of conspiracy under §§ 1983 and 1985 in the course of opposing defendants' motion to dismiss. To hear plaintiff tell it, amendment is justified because his complaint already contains allegations of conspiracy. It only lacks a formal acknowledgement of those conspiracy claims.

Thus, amendment would only be bringing the form of Moore's complaint in line with its subject matter. But defendants argue that the Court should nevertheless deny his request, because even if he did state a claim for

conspiracy under § 1985, that claim would run afoul of the intracorporate conspiracy doctrine.  By defendants' logic, that doctrine precludes any conspiracy claim plaintiff could bring.  Thus, giving plaintiff leave to amend would be futile.

To resolve this conflict, then, the Court must consider the complaint in light of whether it could hypothetically state a viable § 1985 claim.  That claim involves four elements: "(1) a conspiracy; (2) to deprive directly or indirectly any person of equal protection of the laws, or equal privileges and immunities; . . . (3) an act in furtherance of the conspiracy; [and] (4) whereby his person or property is injured or he is deprived of any right of a U.S. citizen." *Poulos*, 2015 WL 5707496, at *7 (citing *Mian*, 7 F.3d at 1087-88).

The intracorporate conspiracy doctrine deals with the first element—the existence of a conspiracy—in circumstances where the coconspirators are all members of the same corporation.  The doctrine's root logic is that "because employees acting within the scope of their employment are agents of their employer, an employer and its employees are generally considered to be a single actor, rather than multiple conspirators." *Fed. Ins. Co. v. United States*, 882 F.3d 348, 368 (2d Cir. 2018).

The Second Circuit has itself applied the doctrine in considering § 1985 claims.  *Girard v. 94th St. & Fifth Ave. Corp.*, 530 F.2d 66, 70 (2d Cir. 1976).  Similarly, courts routinely extend the intracorporate conspiracy doctrine to

municipal—in addition to commercial—corporations. *See Broich v. Inc. Vill. of Southampton*, 650 F. Supp. 2d 234, 247 (E.D.N.Y. 2009) (applying intracorporate conspiracy doctrine to employees of village).

However, as Moore correctly notes, there is at least one exception to the intracorporate conspiracy doctrine. The "personal stake" exception allows for a corporate employee to nevertheless conspire with his coworkers if he is "motivated by an improper personal interest separate and apart from that of their principal." *Peck v. Cty. of Onondaga*, 2021 WL 3710546, at *15 (N.D.N.Y. Aug. 20, 2021).

A personal stake typically contemplates that the defendant "exercises official duties in unconstitutional ways to secure personal benefit." *Peck*, 2021 WL 3710546, at *15 (cleaned up) (citing *Alvarex v. City of N.Y.*, 2012 WL 6212612, at *3 (S.D.N.Y. Dec. 12, 2012)). Some examples of a personal stake include infringing a plaintiff's rights to cover up for a prior use of excessive force, engaging in race-based false arrests to boost arrest numbers in pursuit of a promotion, or acting out of pure malice. *Ali v. Connick*, 136 F. Supp. 3d 270, 282-83 (E.D.N.Y. 2015).

Defendants are all employees of Syracuse. Any act that any of these defendants could have taken in furtherance of a conspiracy would, as a consequence, be precluded under the intracorporate conspiracy doctrine unless plaintiff can establish an exception. *See Broich*, 650 F. Supp. 2d

at 247.  Moore's request to amend his complaint to include a § 1985 claim would thus be moot unless he can point to a personal stake.

For most defendants, Moore plainly fails.  He has not clarified any unique benefit for Buckner or any of the Does to establish a personal stake.  He alleges only that these defendants "conspired, agreed, and acted in furtherance of their agreements" to falsify testimony and deprive plaintiff of his rights under state and federal law.  Compl. ¶ 18.  He also alleged that Turo wrote a use of force report that found Buske and Brown's use of force to be reasonable.  *Id.*  Neither allegation establishes that any of these defendants had any interest in participating in a conspiracy outside the scope of their jobs.

But Buske and Brown are a different story.  The conspiracy that Moore alleges involved Buske and Brown falsifying an arrest report to cover for their use of excessive force.  Courts routinely consider covering up for a use of excessive force to be a personal stake sufficient to trigger the exception to the intracorporate conspiracy doctrine.  *See Ali*, 136 F. Supp. 3d at 283 (noting that courts apply personal stake exception when plaintiff alleges defendant violated rights to cover for use of excessive force).  Accordingly, Buske and Brwon at least had a personal stake in the alleged conspiracy, and thus could have conspired with other Syracuse employees.  *See, e.g.*, *Hill v. City of N.Y.*, 2005 WL 3591719, at *6 (E.D.N.Y. Dec. 30, 2005) (finding intracorporate

conspiracy doctrine inapplicable when defendant acted in own personal interest to cover up use of excessive force).

Accordingly, Moore's proposed conspiracy claim under § 1985 is not unequivocally precluded by the intracorporate conspiracy doctrine.[10] Perhaps, then, if given the opportunity to amend his complaint, he could present viable conspiracy claims.  The question is whether the Court should grant him that opportunity.

Defendants object—correctly—that the proper mechanism to ask for leave to amend is not in a responsive pleading, but in a formal motion to amend under Rule 15.  FED. R. CIV. P. 15(a)(2) (requiring party to request leave to amend pleading from court except once within twenty-one days of service of responsive pleading or motion).  Additionally, in this District "[a] party moving to amend a pleading pursuant to [Rule 15] must attach an unsigned copy of the proposed amended pleading to its motion papers" including the proposed insertions and deletions of language.  Local Rule of the Northern District of New York 15.1(a).  Moore did neither.

The Court notes that "it is within the court's discretion to deny leave to amend when leave is requested informally in a brief filed in opposition to a motion to dismiss."  *Golub Corp. v. Sandell Trans., Inc.*, 2016 WL 4703734, at

---

[10] Because this Court has recently concluded that it will extend the intracorporate conspiracy doctrine to § 1983 conspiracy claims as well, everything in this section applies with equal force to plaintiff's suggested § 1983 conspiracy claim.  *Peck*, 2021 WL 3710546, at *15-16.

*6 (N.D.N.Y. Sept. 8, 2016) (cleaned up) (citing *Corsini v. Nast*,

613 F. App'x 1, 4 (2d Cir. 2015) (summary order)).

Under these circumstances, the Court is inclined to exercise that

discretion.  Moore has, by his own admission, simply omitted a claim that he

intended to state.  Plaintiff's informal request for leave to amend must be

denied.

## V. <u>CONCLUSION</u>

Although Moore's complaint of excessive force against the police is

decidedly—and tragically—common in a number of ways, plaintiff has

nevertheless managed to present a complaint full of unexpected novelty.  For

the most part, though, those unique wrinkles amounted only to distraction.

Given the complexities afoot in the present state of New York state

procedural law, the Court's hands are tied when it comes to plaintiff's state

law claims.  Similarly, plaintiff's muddled conspiracy claims must be laid to

rest, at least for now.  Nevertheless, the core of plaintiff's claim—that Buske,

Brown, Turo, and Syracuse share responsibility for plaintiff's alleged assault

at Buske and Brown's hands—remains vital.  That claim must proceed.

Therefore, it is

ORDERED that

1. Defendants' partial motion to dismiss under Rule 12(b)(6) is

   GRANTED;

2.  Counts: (XI) false imprisonment under New York state law;

    (XII) assault under New York state law; (XIII) battery under New York

    state law; (XIV) negligent training, hiring, retention and supervision;

    and (XV) for declaratory relief are DISMISSED without prejudice;

3.  Counts: (II) municipal liability under § 1983 through *Monell* against

    defendant Kenton T. Buckner; (III) failure to prevent a conspiracy in

    violation of constitutional rights under 42 U.S.C. § 1986; (V) false

    imprisonment under § 1983; (VI) assault and battery under § 1983; and

    (X) ratification are DISMISSED with prejudice;

4.  Defendant Kenton T. Buckner is DISMISSED from the case;

5.  Defendants John Does 1-200 are DISMISSED from the case;

6.  Defendants' motion to compel plaintiff Shaolin Moore to replead his

    complaint or in the alternative to strike portions of his complaint is

    DENIED;

7.  Plaintiff Shaolin Moore's informal request to amend his complaint is

    DENIED; and

8.  Defendants must answer the complaint's Counts: (I) excessive force

    under § 1983 against Buske, Brown, and Turo; (II) *Monell* liability for

    the City of Syracuse; (IV) false arrest under § 1983 against Buske and

    Brown; (VII) unlawful search of person under § 1983 against Buske and

    Brown; (VIII) unlawful search of a vehicle against Buske and Brown;

and (IX) deliberate indifference to a serious medical need against

Buske, Brown, and Turo no later than Wednesday, September 21, 2021.

IT IS SO ORDERED.

Dated:  September 2, 2021
       Utica, New York.

David N. Hurd
U.S. District Judge